**Darnella BARJON and Lee Duran,**
**Plaintiffs–Appellants,**

v.

**John H. DALTON, Secretary of the Navy, Defendant–Appellee.**

No. 96–17117.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1997.

Decided Dec. 22, 1997.

---

Elaine W. Wallace, Oakland, CA, for Plaintiffs–Appellants.

Michael A. Hirst and Mary L. Grad, Assistant United States Attorneys, Sacramento, CA, for Defendant–Appellee.

Before: CHOY, ALARCON, and T.G. NELSON, Circuit Judges.

CHOY, Circuit Judge:

Plaintiffs–Appellants Darnella Barjon ("Barjon") and Lee Duran ("Duran") appeal the grant of summary judgment in favor of Defendant–Appellee John Dalton, Secretary of the Navy ("Secretary"). Appellants claim that the district court erred in denying them additional attorney's fees in excess of those already awarded by the Secretary for attorney Elaine Wallace's ("Wallace") successful work in their administrative proceedings.

Specifically, Barjon and Duran argue that the district court erred in the following respects: 1) defining the relevant legal community as the Sacramento area instead of the San Francisco area; 2) limiting Sacramento's prevailing market rate for employment discrimination cases in 1994 to $200 per hour; 3) failing to compensate for the delay in payment of fees; and 4) failing to award reasonable law clerk costs.

We AFFIRM the decision of the district court in all respects, except on the issue of law clerk costs which we REVERSE.

## Factual and Procedural Background

Darnella Barjon and Lee Duran filed administrative complaints against John Dalton, as Secretary of the Navy, alleging discrimination while working for the federal government at Mare Island Naval Shipyard located in the city of Vallejo. Barjon and Duran each paid Elaine Wallace, whose office is located in Oakland, the sum of $1 to serve as attorney in their respective proceedings.

### I. Barjon

On March 4, 1993, Barjon filed a formal administrative complaint alleging discrimination on the basis of sex. An Administrative Judge found that Barjon had been subjected to discrimination and recommended her promotion.[1] In a final decision dated April 18, 1994, the Secretary adopted the judge's recommendation. As a prevailing party, Barjon became entitled to an award of reasonable attorney's fees and costs from the Secretary.[2]

As Barjon's counsel, Wallace petitioned for attorney's fees on April 25, 1994. She requested $14,380.90 based on her 57.15 hours (30.4 hours in 1993 and 26.75 hours in 1994) at $250 per hour, plus costs of $93.40. On June 6, 1994, the Secretary rejected Wallace's request and offered an hourly rate of $185–$200 per hour.

Wallace appealed to the Equal Employment Opportunity Commission, Office of Federal Operations ("EEOC–OFO"). But on August 11, 1995, the EEOC–OFO issued a final decision denying Wallace fees in excess of $200 per hour.

Having exhausted all administrative remedies, Wallace filed suit in federal court, in the Sacramento area which is part of the Eastern District of California, on September 1, 1995. On September 14, 1995, the Secretary issued a check for Barjon's undisputed fees and costs in the amount of $11,523.40 based on 57.15 hours at $200 per hour plus $93.40 in costs.

### II. Duran

Duran's administrative matter was formalized on January 22, 1993. On August 17, 1994, Duran and the Secretary entered into a settlement of the administrative complaint, the terms of which included a provision for payment of reasonable attorney's fees.

Accordingly, on August 25, 1994, Wallace petitioned for $10,249.97 based on 40.10 hours (24.75 hours in 1993 and 15.35 hours in 1994) at $250 per hour, 3.60 hours for her law clerk Michael Fried at $25 per hour, plus costs of $134.97. As in the Barjon matter, the Secretary offered only $200 per hour.

On November 28, 1994, Wallace appealed to the EEOC–OFO. But the EEOC–OFO deemed the appeal premature and closed the file without processing the appeal.

On September 1, 1995, Wallace consolidated the Duran matter along with Barjon's case and filed in federal court in the Eastern District of California. On October 11, 1995, the Secretary sent a check to Wallace for the undisputed fees and costs in the amount of $8,154.97 based on 40.10 hours at $200 per hour plus $134.97 in costs. The amount did not include law clerk costs.

### III. District Court Proceedings

On August 9, 1996, Barjon and Duran filed a motion for summary judgment requesting the following relief: Attorney's fees based on a $250 hourly rate-instead of the $200 rate awarded by the Secretary for successful work in the administrative proceeding, an enhancement for the delay in payment of fees, and law clerk costs. On August 23, 1996, the Secretary filed an opposition as well as a cross-motion for summary judgment. On October 9, 1996, the district court denied Barjon and Duran's motion and granted the Secretary's motion for summary judgment.

Specifically, the district court found that Sacramento, not San Francisco, was the relevant market. Furthermore, it found that

1. Barjon did not prevail on all issues, but that is not relevant to this appeal.

2. In this case, the Secretary does not dispute that Appellants are entitled to reasonable attorney's fees; nor does the Secretary dispute the number of hours charged. Rather, the primary dispute is over the appropriate hourly rate to be used in calculating the fee award.

$200 was the prevailing hourly rate for similar work in the Sacramento area. The district court denied interest for the delay in payment of undisputed fees and did not address the issue of law clerk costs.

On October 21, 1996, Barjon and Duran filed this appeal.

### Standard of Review

■ An appellate court reviews an award of attorney's fees and costs for an abuse of discretion. *Schwarz v. Secretary of Health & Human Services*, 73 F.3d 895, 900 (9th Cir.1995) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)). A district court abuses its discretion if its fee award "is based on an inaccurate view of the law or a clearly erroneous finding of fact." *Id.* (quoting *Corder v. Gates*, 947 F.2d 374, 377 (9th Cir.1991)).

### Analysis

Under 42 U.S.C. § 1988(b), a court has discretion to award reasonable attorney's fees to the prevailing party in specified cases. Ascertaining a reasonable award is sometimes complicated when a client is not charged his attorney's customary hourly rate. In this case for example, Barjon and Duran each paid Wallace $1 to serve as attorney in their respective proceedings.

■ But despite the actual fee charged by the attorney, the Supreme Court of the United States has determined that § 1988 attorney's fees are to be calculated according to the "prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). Therefore, the choice of a relevant community and the prevailing rate in that community are crucial to establishing the amount of attorney's fees granted.

We address each of these factors in turn.

### I. Relevant Community

■ Generally, the relevant community is the forum in which the district court sits.

*Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir.1991). However, rates outside the forum may be used "if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir.1992).

In this case, Wallace filed Barjon and Duran's complaint with the Eastern District of California. The district court found insufficient evidence that competent local counsel was unavailable. Accordingly, the district court elected to apply the rates of the local forum-the Sacramento area-rather than the rates of Wallace's place of business-the San Francisco area.[3]

### A. Application of the Local Forum Rule

Appellants argue that the local forum rule in *Davis* should not be applied in their case for two reasons-"geo-political realities" and civil rights enforcement.

■ First, Barjon and Duran contend that the "relevant community" in *Davis* is geo-politically different than the forum lines drawn for venue purposes. For example, Mare Island, where the cause of action arose, is located in Vallejo which the federal government considers part of the San Francisco, not Sacramento area, for pay purposes. By illustrating how the boundaries for venue are not always consistent with the geo-political realities of the local community in which the cause of action arises, Barjon and Duran assert that the "relevant community" should not be limited to a court's venue.

Unfortunately, Appellants have no legal precedent to support these assertions. They cite *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169 (4th Cir.1994), as an example in which the "relevant community" included attorneys a short distance across the edge of the district's venue. However, this Fourth Circuit case actually confirmed *Davis* in stating "that the community in which the court sits is the first place to look to in evaluating

---

**3.** Wallace's actual place of business is Oakland.

the prevailing market rate." *Rum Creek*, 31 F.3d at 179.

■ A second basis offered on appeal by Barjon and Duran to deviate from the *Davis* presumption is facilitating cases of national importance. *See, e.g., Zolfo, Cooper & Co. v. Sunbeam–Oster Co., Inc.*, 50 F.3d 253 (3d Cir.1995).

In particular, Barjon and Duran assert the importance of ensuring the widespread enforcement of civil rights. They rely on the rationale discussed in *Casey v. City of Cabool, Missouri*, 12 F.3d 799 (8th Cir.1993).

> The relevant market for attorneys in a matter such as this [§ 1983] may extend beyond the local geographic community. A national market or a market for a particular legal specialization may provide the appropriate market. To limit rates to those prevailing in a local community might have the effect of limiting civil rights enforcement to those communities where the rates are sufficient to attract experienced counsel. Civil rights would be more meaningful, then, in those communities (large cities) where experienced attorneys can command their customary fees.

*Id.* at 805 (quotations omitted).

Although *Casey* is an Eighth Circuit case, we choose to address this argument on its merits not having had an opportunity to do so in prior cases before this court.[4] First, despite the concern in *Casey* over civil rights enforcement, the court of appeals still upheld the district court's award of $150 per hour to plaintiff's attorney rather than his customary rate of $185 per hour. *Casey*, 12 F.3d at 806. Thus, while a consideration for the court, the enforcement factor was not dispositive-allowing the same result reached by the district court in Barjon and Duran's case.

More importantly, in this case, Barjon and Duran have offered no evidence that San Francisco rates are necessary to the enforcement of civil rights cases in Sacramento. Without evidence that Sacramento rates preclude the attraction of competent counsel, their argument remains too theoretical to

warrant departure from the local forum rule given in *Davis*.

### B. Unavailability of Local Counsel

■ Having affirmed use of the local forum rule, we now address whether the district court abused its discretion in holding that Barjon and Duran failed to prove the unavailability of local counsel. We hold that the district court did not abuse its discretion.

Appellants offer declarations attesting to the lack of Sacramento attorneys who represent federal employees in employment discrimination cases. In fact, the district court concedes the shortage.

Nonetheless, the district court refuses to find unavailability for two reasons. First, despite the lack of attorneys in Sacramento, the court notes the similar lack of specialists in San Francisco. Whether or not intended by the district court, this implies that the unavailability of local counsel is not the focus when non-local counsel is relatively limited as well, as if Barjon and Duran must also show that the San Francisco area has several more available counsel than the Sacramento area.

■ However, we caution that the test in *Gates* does not require an inquiry into the unavailability of counsel *outside* the local forum. *See Gates*, 987 F.2d at 1405. Rather, plaintiffs must only prove the unavailability of counsel *within* the local forum in order to justify the use of outside counsel.

The district court's second justification is Barjon and Duran's lack of attempt at retaining Sacramento counsel, as if to require that Appellants prove they solicited local counsel but found them unwilling.

■ Indeed, Barjon and Duran admit that they never solicited other attorneys before hiring Wallace. However, we clarify that the failure to solicit local counsel is not necessarily fatal to proving unavailability. In establishing unavailability, *Gates* allows proof of either unwillingness *or* inability due to lack of experience, expertise, or specialization.

---

4. *See, e.g., Schwarz v. Secretary of Health & Human Services*, 73 F.3d 895, 906–907 (9th Cir. 1995) (declining to address the need for a national market in employment discrimination cases because plaintiff raised the argument for the first time in her reply brief).

There is no requirement that plaintiffs prove both.

In the end though, the district court made the proper finding despite its lack of precision. The evidence suggests the availability of qualified local counsel. The same declarations offered by Appellants to show the unavailability of Sacramento counsel also reveal declarants themselves who have represented plaintiffs like Barjon and Duran previously. Thus, the district court correctly defined the relevant community as the local forum of Sacramento.

## II. Prevailing Hourly Rate

■ Having defined Sacramento as the relevant community, the next inquiry becomes the reasonable hourly rate in the Sacramento area. The established standard is the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210–11 (9th Cir.1986).

In this case, the district court limited Appellants to an hourly rate of $200 instead of their requested rate of $250. We agree with the district court.

■ Barjon and Duran's evidence of a higher rate is unpersuasive. For example, they present evidence that several attorneys were awarded rates of $250 in a past case. But evidence that rates as high as $250 have been awarded on one occasion is far from establishing $250 as the *prevailing* rate in Sacramento.

■ Furthermore, Barjon and Duran claim their attorney has established her billing rate in Sacramento based on prior work done in the area. But an attorney's prior fee award is not sufficient without other evidence showing that the requested rates are prevailing in the community. "While an attorney's prior fee award may bear on the selection of a reasonable fee in a later case … simply offering the prior award is not enough." *Schwarz,* 73 F.3d at 908 (requiring additional proof that the requested rates are in line with other attorneys in the community of similar skill).

■ As a last attempt, Appellants argue that an attorney's customary billing rate is strong evidence of the prevailing market value. More significantly, they contend that a different average rate in the community should not justify departure from the attorney's customary billing rate. But the only cite provided for this argument is a Seventh Circuit case. *See Gusman v. Unisys Corp.,* 986 F.2d 1146 (7th Cir.1993).

In *Gusman,* Judge Easterbrook asserted that *Blum v. Stenson* does not establish a principle of averaging. *Id.* at 1149. However, even if *Gusman* were binding precedent, the district court in this case did not simply average the rates for *all* attorneys in the Sacramento area. Rather, the district court considered Wallace's expertise and experience and applied the prevailing rate for *similarly qualified* local counsel. This approach is well-established in our circuit. *See White v. City of Richmond,* 713 F.2d 458 (9th Cir. 1983).

In short, we agree that $200 per hour is the appropriate prevailing rate in the Sacramento area.

## III. Compensation for Delayed Payment

Even though we refuse to award additional attorney's fees over the prevailing rate in the relevant community, Barjon and Duran still request compensation for the Secretary's delay in payment of *undisputed* fees. Wallace argues that the right to fees accrued when her clients became prevailing parties-April 18, 1994 in Barjon's case and August 17, 1994 in Duran's case. Since fees were not paid until September 14, 1995 and October 11, 1995 respectively, Wallace requests an enhancement for the delay.

■ The Supreme Court has established that an appropriate adjustment for delay in payment of fees is within the contemplation of § 1988. *Missouri v. Jenkins,* 491 U.S. 274, 284, 109 S.Ct. 2463, 2469–70, 105 L.Ed.2d 229 (1989). To that end, the district court may choose to apply either the attorney's current rates to all hours billed or the attorney's historic rates plus interest. *In re Washington Public Power Supply System*

*Securities Litigation,* 19 F.3d 1291, 1305 (9th Cir.1994).

■ In this case, the district court denied Appellants any interest on the undisputed fees. Barjon and Duran argue that this constitutes an improper denial of compensation for the delay in payment. We disagree with this interpretation.

The $200 rate awarded to Wallace by the district court adequately compensates her for the delay in payment. First, the $200 rate constitutes the high-end rate prevailing in Sacramento in 1994 for work during January 1993 through August 1994. Wallace received this rate for all hours worked (97.25 hours), even though more than half (55.15 hours) were performed in 1993.

Second, the $200 rate seems reasonable since the delay itself was not very long and the amount of fees not very high. In *Gates,* the court upheld an award for the delay in payment when plaintiffs' attorneys had to wait over three years and their fee totalled millions. But *Gates* also acknowledged a case which denied compensation for a fourteen-month delay in payment of $8,139 in fees. *See Smith v. Freeman,* 921 F.2d 1120 (10th Cir.1990). The delay and amount in this case (seventeen-month delay of $11,-523.40 in fees for Barjon matter and fourteenth-month delay of $8,154.97 in fees for Duran matter) are very similar to the situation in *Smith.* Accordingly, we deny Appellants any further compensation for the delay in payment of undisputed fees.

## IV. Law Clerk Costs

On appeal, Barjon and Duran argue that the district court improperly ignored their request for law clerk costs as part of attorney's fees. Unfortunately, the district court never even addresses the issue in its order.

■ The Secretary argues that this issue was never raised below and cannot be raised for the first time on appeal. As a general rule, "an appellate court will not hear an issue raised for the first time on appeal." *Whittaker Corp. v. Execuair Corp.,* 953 F.2d

510, 515 (9th Cir.1992). However, where the issue "is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed," the court can exercise its discretion and review the issue on appeal. *A-1 Ambulance Service, Inc. v. County of Monterey,* 90 F.3d 333, 339 (9th Cir.1996) (quoting *Bolker v. C.I.R.,* 760 F.2d 1039, 1042 (9th Cir.1985)). Since the pertinent record has been fully developed on this issue, we exercise our discretion to adjudicate this issue on appeal. *See id.* We find that the record supports an award of law clerk costs.

■ First, regulations clearly allow for fees, not only for attorneys, but for law clerks as well. *See* 29 C.F.R. § 1614.501(e)(iii). Furthermore, the fee requested here is reasonable. The time records of Wallace's law clerk indicate a total of 60.50 hours worked and an hourly rate of $90. Nonetheless, Wallace requests compensation for only 3.6 hours worked at an hourly rate of $25, presumably to account for her law clerk's lack of experience and expertise.

The 3.6 hours were spent on several tasks, including researching, photocopying, filing, and various conferences. The Secretary presents no evidence to refute that such work was reasonable.

Moreover, there is precedent to support a $25 hourly rate. *See, e.g., Suzuki v. Yuen,* 678 F.2d 761 (9th Cir.1982). In fact, the Secretary's own declarations evidence much higher rates for law clerks-between $40 and $75 per hour in the Sacramento area.

In short, the amount requested for law clerk costs in this case is justified by the evidence in the record. Therefore, we reverse and instruct the district court to enter an amended judgment awarding Appellants $90 in law clerk costs.

Appellants' request for attorney's fees for this appeal is denied.[5]

No costs allowed.

---

**5.** Appellants also request that the Secretary be sanctioned for his failure to comply with Circuit Rule 30–1.6 which prohibits duplicative excerpts

of record. Since the Secretary's actions do not appear "vexatious," we decline to impose sanctions.

AFFIRMED–IN–PART and RE-VERSED–IN–PART.